Thank you. My name is Patty Goldman. I represent the Health, Civil Rights, and Farm Worker petitioners in this case. I will be sharing my argument with Mr. Brody, who represents the state intervenors. I will address jurisdiction and the merits, and Mr. Brody will address mandamus using six minutes of our time, and we would hope to save three minutes for rebuttal. This case challenges an order issued by EPA Administrator Pruitt in which he denied a petition to ban a pesticide called chlorpyrifos. The order left tolerances in place, even though the administrator did not and could not find this pesticide to be safe. In fact, EPA had found this pesticide unsafe in drinking water in 2014 based on acute poisoning risks, and then in 2016 it found this pesticide unsafe every way children are exposed to it, and this time EPA was trying to protect children from damage to their brains, from reduced IQ, autism, attention deficit disorder, every parent's fears. Now EPA does not defend on the merits. Instead, it argues that this court lacks the power to decide this case, and I would like to turn first to that issue. Admittedly, the food safety law has an administrative exhaustion requirement called objections, but rarely do the courts deem administrative exhaustion requirements to be jurisdictional, even when they're stated in mandatory terms. Instead, the question is, did Congress intend to cut off judicial review and override the presumption that all judicial action, all agency actions are subject to judicial review? And here we can look at the food safety law itself, subsection H. That is the provision in the first paragraph that provides that judicial review of a set of actions, orders and regulations that establish or revoke tolerances are reviewed, and that provision provides that review is in the court of appeals, not the district court, and generally after objections are filed and decided. That is one of the provisions that EPA relies on here, but there is another provision, H.5, which prescribes whether judicial review after objections is exclusive, and that provision makes it clear that it is not if review of an issue is not obtainable through that path. And I want to focus on the distinction in judicial review of actions, which is in the court of appeals, and judicial review of issues, which is not exclusive in the court of appeals after a decision on objections if it's not to be ironclad and unbending. And in fact, it made it clear that it is not exclusive if an issue cannot be reviewed through that process. Now I know my colleagues rely on various cases. I'd like to address one, Gallo, which was a case in which the Ninth Circuit did review a jurisdictional provision, but the language my colleague cites was not a holding in that case. Instead, it was dicta. Gallo was challenging an assessment that it was required to pay into a dairy board that then would promote dairy products, and it did challenge that assessment in an administrative process, and it never tried to bypass that process. Instead, it sought interim relief. It tried to get permission to pay its assessment into an escrow account. It was denied that, and that is what it brought to the courts. And what the Ninth Circuit held is that's not a final decision. Review of that interim relief must await the end of the administrative process. The D.C. Circuit in Avocado Plus made it clear that Gallo was a finality decision and did not apply the most current jurisdictional cases on when an exhaustion requirement is jurisdictional, and it reached the opposite result. Let's assume that we accept your argument that it's not a jurisdictional question. Under the statutory scheme, the EPA does get an opportunity to respond to the objections that were filed. Now, as I, if my notes are correct, the objections in this case were filed in November. Is that a response that's as soon as practical? I mean, the statute contemplates that the EPA has a little room in responding to the objections, and then they respond. The record is then complete, and then the challenge is raised. Then we have a fuller record, and the arguments are fleshed out for appellate review. Is it too soon to act? What is your best argument in terms of excusing or waiving the exhaustion requirement? Well, our best argument is that this case and our objections are identical, and they present purely legal issues. And there are two reasons why judicial review or review of those issues is not obtainable through the objections process. The first is EPA exceeded its authority by leaving tolerances in place without making a safety finding. Under the and it must publish a finding of safety, and particularly for children, that there is reasonable certainty of no harm to children. It has not done so, and I doubt that it would contend otherwise. And the food safety law requires EPA to revoke tolerances if it finds a pesticide unsafe, and that's what it found here. In risk assessments that are undisturbed and in a proposed revocation rule that has not been withdrawn, it's hanging out there in a legal limbo. So EPA cannot, in the objection process, give itself authority that Congress has denied it, the authority to leave a tolerance in place without a safety finding. So if I understand your argument, it is since the only issues here presented by the objections are pure issues of law, and they have to act as soon as practicable under the statute, a year is more than practicable to respond to pure objections of law, yes? Yes, particularly here when we briefed the issues, and EPA did not. Could we also take into account, would it be proper for us to take into account the long history of seeming delay in this very case that required prior action by the 9th Circuit on several occasions? Yes, particularly once EPA did find this pesticide unsafe, then the delay becomes more and more unreasonable. And here we have final risk assessments, which is how EPA determines safety, finding this pesticide unsafe. Another reason that review is not obtainable through the objection process is EPA is using that process to perpetuate its violation of the law. In the Pruitt order, EPA stated that it did not want to take regulatory action until 2022 because it wanted to study the science more. And it recently told Senators that that's what it's doing. It's going to keep studying the science, maybe make some modifications to a proposed regulatory action, and not take regulatory action until about 2022. So it is using this process to put off the action that Congress has compelled. Now, EPA has said there's a difference between ruling on the objections and taking regulatory action, but here there's no difference. Our petition from 2007 sought revocation of all tolerances and cancellation of all registrations. It sought regulatory action. And under the food safety law, EPA can take alternative actions. It can deny the petition or it can issue a final regulation revoking the tolerances. Here it denied the petition, but it left the proposed regulation hanging out there in legal limbo. Congress did not contemplate that. Congress tightened up the law in 1996 when it unanimously passed an overhaul of our food safety law. I think if the court has further questions, I guess I would like to address a case of our sister circuit, the Second Circuit, the NRDC case. Because in that case, the court was construing these very provisions in the Food Safety Act. But it was a very different case because there what the plaintiffs were doing is trying to bypass Court of Appeals review. Instead, the plaintiffs went to district court under the Administrative Procedure Act and argued that they could bring their challenges to decisions on tolerances. There was the end of a risk assessment process in district court because there was no remedy at law, no adequate remedy at law in the Court of Appeals. And the Second Circuit disagreed and said that in that situation, filing objections and waiting for a decision was an adequate remedy. And it also addressed the language in the food safety law about whether an issue can be reviewed, whether review of an issue is obtainable. And it found that in that situation, where the questions were much more policy and science and applying policy to particular facts, that review was obtainable. In that case, sort of as an afterthought, NRDC was also seeking review under the general pesticide law known by its acronym FFRA. And again, because the court had already found that review was obtainable under the food safety laws, it did not apply the H-5 exception and allow review under FFRA. It said the issues were the same, which is true. The legal issues are the same. But here, the situation is different because review is not obtainable of violating the law by keeping an unsafe pesticide in our food and perpetuating the violation through the objection process. So what we would ask this court to do is to decide that it has jurisdiction, either by waiving exhaustion or by finding reviews not obtainable under the food safety law. And we asked the court to reverse the Pruitt order and to remand and direct EPA to grant the petition and finalize the proposed rule that would revoke all tolerances because EPA has found this pesticide unsafe. I'd like to yield the rest of the time for Michael. May it please the court, Frederick Brody of the New York Attorney General's Office for the United States took the unusual step of intervening in this case because we have substantial interest at stake, most importantly, protecting the health of infants and children within our borders whose brain development is being impaired by chlorpyrifos residues on food. We agree with petitioners that the administrator's order violates the law and that this court has jurisdiction. I want to focus, though, on the availability of mandamus. At the very least, mandamus is warranted here because EPA's failure to act on the objections violates the law in two ways. First, FFDCA, as Your Honor pointed out, says the objections must be decided as soon as practicable. Instead of deciding the objections, EPA has sat on them for 13 months. And I would respectfully correct the court. It hasn't been under a year. It's been a year and a month and counting. I would urge the court to do that. No one's filed a petition for mandamus. I take it that you want us to construe what's been filed as a petition if mandamus is the only route to granting relief, right? Correct, Your Honor. Is there any procedural impediment to filing a new writ of mandamus if we determine that none has been filed and it would be improper to construe what's been filed as a writ for mandamus? It would be inadvisable because of the grave consequences of delay because children are being exposed to chlorpyrifos day by day, minute by minute, and it's impeding their brain function. So it's important to resolve the case as soon as possible. This court frequently construes an appeal of an otherwise non-appealable order as a petition for mandamus. Cases to that effect are cited on page 18 of our reply brief, fortuitously including one by Your Honor, and there are many more. Those cases defeat EPA's argument on Federal Rule 21. They were not, none of them were brought as mandamus petitions in the first place, yet this court treated all of them as such. With respect to the 13 months, I would ask the Court, I would urge the Court to ask EPA's counsel, when are you going to decide the objections? However, EPA responds, in view of the 13-month delay so far, the Court should issue mandamus compelling EPA to decide the objections in 30 days. We would also ask the Court to retain this demand. We could then return to the Court, supplement the briefs, supplement the record, and then obtain a decision on the merits, and that would obviate any jurisdictional impediment. The second reason why mandamus is warranted is that EPA can keep tolerances in effect only if it finds them safe. In 2015. Again in 2016, EPA said that it could not find the objections. EPA has kept the tolerances in effect without the required finding of safety. In other words, EPA's inaction has perpetuated the violation of FFDCA's safety standard. Without mandamus, the agency would be evading judicial review by sheer inaction. Under the law. In the Federal Rules of Civil Procedure, Congress has given the district courts the power to grant relief, even if not requested by the parties, where it would further what the Court has determined are the underlying equities of the situation. Is there a similar provision in the rules or the case law for the Court of Appeals? Well, that's the All Writs Act. Federal courts may issue all writs, necessary or appropriate, in aid of their respective jurisdictions. And here, the in aid of clause is critical. Even if this Court were to accept EPA's jurisdictional argument, the Court may still use mandamus to preserve its prospective jurisdiction by requiring EPA to act on the objections. And I can cite a case on that, Public Utility Commissioner against Bonneville Power Administration 767F2nd at page 630. Otherwise, again, by sitting on the objections, EPA could defeat the Court's jurisdiction. I want to briefly highlight the track factors, which in In Re Pana, this Court said were dispositive on, were the method of determining whether mandamus is proper. First, human health and welfare are at stake. Chlorpyrifos is used on many food crops that include raspberries, blackberries, apples. This Court concluded, this Court concluded in 2015 that considerable human health interests are prejudiced by EPA's delay. And EPA's most recent human health risk assessment in 2016 commented on the breadth of information available to the effect that chlorpyrifos causes neurological damage to infants and children. Interveners have a strong interest in avoiding the medical and educational costs caused by intellectual disability that results from organophosphate pesticide exposure. Those costs have been estimated at more than $44 billion a year. That's the Atena article cited in footnote 3 of our brief. And, of course, chlorpyrifos is the most widely used of the organophosphate pesticides. The Congressional timetable calls for swift action. EPA has already had reasonable time to take action. The objections are pure matters of law. We didn't ask for an evidentiary hearing. We suggested that it would be appropriate to decide them within 60 days. We have heard nothing. And EPA has not identified a single activity of higher or competing priority that would be affected by immediate action on chlorpyrifos. And I would respectfully reserve the rest of my time for my colleague's rebuttal. Thank you, counsel. May it please the court. My name is Philip Dupre and I'm representing EPA in this action. With me at counsel table is Erica Zilioli, also from the Department of Justice. I think the first thing I'd like to do is to encourage the court to focus on what is at issue in this petition for review. And in the petition file in this case, the what is at issue is very clear. Petitioners are challenging the order titled, the order in this case, the entitled chlorpyrifos order denying PANA and NRDC's petition to revoke tolerances. And that was what was requested here. EPA has explained why that order is not reviewable under the FFDCA. Then, for the first time in the brief, the opening brief in this matter, petitioners and interveners asked to also create a request for a writ of mandamus, a petition for a writ of mandamus here in this case. However, as we explained in our brief, that is procedurally improper. But more importantly than that, Rule 21 of the Federal Rules of Appellate Procedure sets forth a very clear way forward for petitioners to request a writ of mandamus. And then, this court may either deny the petition or order a response from the relevant agency. And of course, this court has not ordered any sort of response from EPA in this matter. But I think, so I think it's important to realize that there's sort of two different things going on here. One is a question of whether or not the order at issue is reviewable. And secondly, is this sort of newly created request for mandamus relief that has just been brought up in the briefs. So, those are procedural issues. And I understand you're going to get to them, and that's fine. But can I jump ahead and say, if we get past the procedural issues in this case, has EPA presented a defense on the merits? Well, I think that, and this goes to why both this court doesn't have jurisdiction, and even if it did, it's a declined review. And I think it's important to say that no final decision has been made by EPA. You know, and I think if you look at the process under 346 AG, again, it explains... Don't you think you need to 2022 to come to a final decision? Well, I'm glad you brought that up, Your Honor, because that, as the Bertrand Declaration stated, is a completely incorrect reading of what Ms. Bertrand stated in her letter to Congress. EPA has never stated that it needs until 2021 to complete. So, when do you, when would you reach a final determination? Well, you know, again, you know, I think, as I understand it, you know, I think the process, without having this court ask for an official response from EPA, you know, and with the understanding that the objections process is a fact-specific basis, EPA expects to complete its response to the objections within a year from now. And that time frame would put this response within the range for EPA's... A year from when? Now. A year from now. Yeah. Well, and I think, you know, I want to focus on why this court both doesn't have jurisdiction and also shouldn't exercise it if it does. And that is, you know, here, EPA denied the order to revoke the tolerances for chlorpyrifos. And petitioners filed objections with EPA stating that EPA's legal analysis was wrong, as well as putting forth several declarations as to the science at issue. Okay? And under the FFDCA... So forgive me for interrupting. If exhaustion, or failure to exhaust, becomes jurisdictional, doesn't it open up the real possibility that an administrative agency can effect the process and effectively deprive the court of ever reaching a review of its determinations by just stretching things out year after year? And isn't that colorably what happened in this very case, or that was the attempt by the EPA? Well, I certainly don't think there's anything in the record to show that that's the attempt of EPA here. Obviously, you know, EPA has a lot going on, and I think it's unfair to simply assume that any failure to take any particular action is a result of bad faith. Here, I think, you know, going back to the statute under 346A H1, it's very clear that the only petitions that...or the only actions that are subject to judicial review are those specifically listed, which include final decisions under G2C. Of course, that final decision hasn't yet been issued. And so I think, you know, regardless of... Well, but that goes back to how long can...if we look...treat it as jurisdictional, then how long can EPA sit on this? They were on the verge of essentially issuing the final regulation, right? And so now, today you're representing that the objections will be responded to within a year from today. The statutory directive basically gives EPA an opportunity to respond as soon as practicable. But there isn't anything in the record indicating what you're going to do in the two years that it will take between the one-plus year that's a conditional year that EPA has to respond. I mean, what's left to be done? Unlike other cases where, you know, expert advisory panels are being paneled, the research is ongoing. Here, I'm not sure what EPA is utilizing this two-year time period to do. Well, the reason there's not anything in the record here is, of course, because the record here goes to the underlying decision of the initial decision to deny the petition to revoke for Pyrofos, and there is no record here with respect to the administrative objections process because essentially that has just been bootstrapped onto, you know, petitioner's brief in this matter. Well, but what counsel is saying is that these are just legal issues that are left to be determined. So essentially, EPA responds to the objections with legal arguments. It's not that there's additional scientific research that's yet to be done. It's whether the EPA has violated what it's supposed to do by leaving the tolerances in place without a determination that it's safe. Well, I think there are several things that should be looked at in evaluating the objections. First is I do want to note that the objections that were submitted by petitioners here did include several references to the science at issue and that there's nothing in the statute that would prevent EPA from looking at the science again in the objections process. But going specifically to the legal issue of whether or not the denial order met the legal standards under the FFDCA, as we pointed out in our brief, these are the exact same arguments that petitioners have raised here. The same legal arguments were brought before the agency and the same legal arguments were brought before the court. Now of course, the agency is considering these arguments, but it has not made a final decision. It may well decide and, you know, change its decision and find in favor of petitioners in the administrative objections process. And I think that goes to the futility question and that is futility is an extremely high bar in order to find that further administrative action would be futile. Again, we simply, as noted by the statute, statutory structure, we don't have a final decision here. And therefore, it's simply premature to defend EPA's decision on the merits because it hasn't yet made a decision on the merits. That decision will come after the administrative objections process pursuant to the FFDCA's statutory structure. And so once that final decision has been made under 346A.H.1, petitioners will have a clear opportunity to petition this court for review if they disagree with the final decision that is taken by EPA. But again, I think it's important to look at the text of the statute, which makes clear what actions are actually reviewable in this court. And only things that are reviewable in the final decisions after the administrative objections process are reviewable by this court. Okay? And it's unclear why petitioners think they can get around that simply by saying, you know, well, it's clearly illegal, therefore we don't have to go through the administrative objections process. But of course that's putting the cart before the horse in two ways. First, because EPA hasn't made a final decision. And two, of course it assumes that EPA's actions were in fact illegal or improper, which is not really appropriate to do in the course of having an administrative objections process. And so I think, again... No, I, maybe I misunderstood their argument, but I think their argument was that as EPA as soon as practicable is relative to the arguments and objections raised, if the objections raised are purely legal objections, and if they, as you yourself indicated, have been raised in one form or another many, many times, how can it be that the objections raised are EPA has not already responded to them? It's like a, you know, a law school homework assignment. It's, you know, maybe you need an extension on your paper, but not a year. Well, you know, I think, you know, I'm not in a position to address today, you know, how EPA will address the various objections in its response. But, you know, petitioners did submit over 40 pages of objections. There were actually three separate administrative objections submitted in this action. And so I don't think EPA concedes at all that it's a simple exercise of, you know, that can be done very quickly. These cases are never simple. Indeed. They're never simple, and it's a complex record. We recognize that. But, you know, it's been going on for years now, and the objections were filed well over a year ago. So while I take your point that there's no futility, I think there's a reasonableness issue, and that's what I understand plaintiff's argument is really going to, that given that there's no new scientific studies that are being convened and conducted, the EPA is saying it wants to look at the science again, right? And then there are legal objections that you both sides have been down this road in terms of what the legal arguments are. Just unreasonable to sit on it until 2022. That's the argument. And now you, it wasn't in the record, but now you're saying, well, it's not going to take us to 2022. I think we'll need another year from now. And so the question is, the definition of as soon as practical, given the factual record in this case is two years, a reasonable timeframe for the EPA to really respond, assuming that we get past the jurisdictional issue. I understood, Your Honor. You know, I'm really not in a position to address that today. Again, you know, we're here to talk about whether or not the underlying petition for review is properly before this court and whether or not this court should rule on it. EPA hasn't made a final decision on this. If we decide that it is properly before the court, what does the EPA want us to do? Well, I think EPA hasn't made a final decision. So I think, I guess what I would say is, you know, if it's a, you lose on that. Okay. So, well, lose on that. And we determined that these are just claim processing procedures. The matter is now properly before the panel to decide what would you like that decision to be? Go to the merits of the case? Order a short timeframe for the EPA to respond to the objections? Well, I think the, we'll certainly not go to the merits of the case. And the reason being is EPA hasn't made a final decision. So it's, it's, it's, I simply can't stand up here and say the initial order denying the petition to revoke tolerances for chlorpyrifos was 100% right because of course that is what is presented to EPA and EPA has yet to make its final decision. I, I think there is a, a separate issue that goes to the administrative objections process. And I think if we were sort of outside of this, this procedure here, where we had an initial petition for review of the underlying decision, you know, petitioners could have well separately filed a writ amendamus requesting that EPA complete the administrative objections in a time certain. You know, and had they done so, this court could have determined that it was worth the agency responding to issued an order and EPA would have responded to that issue and would have. Yeah, but I'm, I'm, I'm, I'm not quite following what you're saying in response to Judge Wynn's question. The statute says as soon as practicable. Yes. While a lot of deference has to be given to the agency when all said and done, that's a, a Congress has said that's the law and it's the duty of this court to enforce the law. Yes. So if we determine that, that has not been complied with, and this is again, assuming arguendo, we disagree with you on jurisdiction, et cetera, then we would issue an order. Presumably, if we don't agree with the mandamus approach of your adversary, we would issue an order saying you must respond. We know you haven't made a final decision. Now you're going to have to make one. Life is tough. And you need to make it by date X. And I take it the date X you would say is one year from now? Well, I think what I would say is, is that's, you know, EPA's current intention is they expect to have a final decision within a year from now. I think there are, what I would also note is simply that, you know, we're not prepared at this point to address whether or not, you know, what is 346AG2C in terms of what as soon as practical means in this context. Oh, I see. I'm glad Judge Rakoff clarified that because I thought your response to my question was, well, if you rule against us on these other issues, then the EPA would actually prefer an order directing it to respond within whatever we determine as soon as practical to mean, because I thought your response was I don't want the panel to reach the merits. So the other alternative would be, well, ordering a response within a specified time frame. Well, I think there's, again, let me try to clarify a little bit how the jurisdictional arguments mesh with the mandamus request. Essentially, what our position is, is that the initial decision is not properly before this court. And that, you know, the reason the court shouldn't reach the merits is both jurisdictional and practicable in part because the administrative objections process will still be ongoing. And so EPA is eventually going to issue a decision on the administrative objections process. And so it simply is, you know, there's no need for this court to reach the merits because EPA is still considering what will be its final decision. Separately, this court could very well agree with us that it does not have jurisdiction to review the underlying decision in this matter, the initial decision denying the petition to revoke the tolerances for court pyrifos. But it could find that mandamus order would be appropriate to ask the agency to respond to the administrative objections within a time certain. Certainly, this court does have that jurisdiction, although we would note just a few things. You know, first is, obviously, we don't think that request has been properly raised as a matter of procedure. And we certainly would request an opportunity to respond directly on that issue in terms of timing for the administrative objections process before this court were to issue any sort of order. All right. We understand. Great. And again, you know, I think what's important to note is the statutory structure of the FFDCA is clear. Initial decisions on a petition to revoke a tolerance for a pesticide are not subject to judicial review. Only after an administrative objection has been filed and EPA issues a final decision on those administrative objections is that final decision subject to review. The initial decision is not subject to judicial review. And that's the clear structure that is set out. EPA is considering the administrative objections. Once the final decision is issued, that decision may or may not reaffirm the initial decision. Certainly, no showing of futility has been met. And we ask the court to let EPA play out the statutory process that Congress enacted. Thank you. Thank you. I would like to address a couple of points. First, finality. My colleague has argued that there is no final decision. But the decision, the Pruitt order, is a final decision on the finality and exhaustion. Supreme Court in Darby said the two are distinct. And the NRDC case, the Second Circuit, held that a decision on the tolerances was final, even though it might be undergoing some or be subject to some administrative review. And that is the case here. This is final. It denied the petition. If EPA had reached the opposite result and issued the revocation order, Clerperifos would have been out of our food supplies by October 1, 2017. It's very final that that has not happened and children are being exposed to this pesticide. In terms of the objections, under the food safety law, objections do not rehash what has already been decided in prior comments. Instead, they can only raise new issues. Here, the issues were before EPA. It had acknowledged it could not retain tolerances without a safety finding. It had done so in its proposed rules. And when it reopened the comment period, what changed is it decided to flout the law. It decided not to do what it had previously conceded was the law. And I'd like to turn to what my colleague has disclosed today for the first time, is that I think he used the word expect, that EPA expects to do something within a year. And I'm not sure what he meant. Had you been notified that a decision on the objections would be forthcoming within a year time frame? No, we haven't heard anything from EPA. All we've heard was through the letter to the senators that they plan to keep studying the issue and not take regulatory action until 2022. To the extent my colleague says something might happen, I'm not sure if he means a paper response to the objections, and that's it, or final regulatory action. And if the decision is to uphold what the Pruitt order said, that means legal limbo until 2022. That's illegal, and we will be denied any remedy, and children will continue to be exposed to this very dangerous pesticide. So we asked the court, our first ask is to decide that you have jurisdiction, reach the merits, and remand to EPA to finalize the revocation order within 60 days. Alternatively, if the court believes it doesn't have jurisdiction, give EPA a 60-day timeline to decide the objections and take regulatory action, retain jurisdiction so there could be expedited briefing and a decision in a timely fashion. All right, thank you. Thank you very much on both sides. The matter is submitted. That was our last case for argument for the day, so the court will be in recess until tomorrow.
judges: Fernandez, Nguyen, Rakoff